UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LISA LIZOTTE, individually and
as parent and natural guardian
of WALTER LIZOTTE,

        Plaintiff,

v.                         Civil Action No. 2:18-cv-01389

SHERIFF MICHAEL FINLEY (sic, Fridley),
Fayette County Sheriff's Dept.,
DEPUTY JOSEPH A. YOUNG, Fayette County
Sheriff's Office, DEPUTY STEVE K.
NEIL (sic, Neal), Fayette County
Sheriff's Office, and STEVE KESSLER,
former Fayette County Sheriff, and
MICHAEL FRANCIS, Superintendent,
WV Division of Corrections and
Rehabilitation, Southern Regional Jail
and Correctional Facility,

        Defendants.

## MEMORANDUM OPINION AND ORDER

        Pending are the motions to dismiss of defendants
Deputy Joseph A. Young, Deputy Stephen K. Neal, and the Fayette
County Sheriff, Michael Fridley[1], each filed February 20, 2019.
The plaintiff filed a joint response to the three motions on
March 20, 2019[2], to which each of the moving defendants replied
on March 27, 2019.

---

[1] Deputy Neal and Sheriff Fridley are identified in the complaint
caption as "Steve K. Neil" and "Michael Finley," respectively.
[2] The response, filed alongside a motion to extend the time for
service of process, is styled "Plaintiff's Memorandum of Law in

## I.    Factual and Procedural Background

This case arises from an arrest that occurred on October 28, 2016.  Early that morning, plaintiff Lisa Lizotte, a "middle-aged woman with many health problems," Compl. ¶ 36, and her son Walter were inside their home when, according to the complaint, "Defendants Neal and Young came to the front door . . . and demanded entry."  Id. ¶¶ 10-11.  The officers allegedly "had no warrant and no probable cause to enter the Lizotte home."  Id. ¶ 12.  Ms. Lizotte "stood in the door of her home and denied the officers permission to enter her home."  Id. ¶ 13.  In order to gain entry despite the persistent denial of Ms. Lizotte, Officer Young allegedly "assaulted Ms. Lizotte by pushing and knocking her to the floor."  Id. ¶ 16.  He then placed her in handcuffs "'to detain her so that (he) could continue (his) investigation however she continued to refuse to comply with (illegal and unconstitutional) direction at which time [he] placed her in the back of (his) patrol car and advised her that she was now under arrest.'"  Id. ¶ 17 (alterations in original; apparently quoting a report of Officer Young with no citation).  Ms. Lizotte's son Walter was "present for, observed,

_____

Support of Her Motion to Extend the Time for Service of Process and in Opposition to the Defendants' Motions to Dismiss."  See ECF # 21.  Although the response was untimely filed, a fact that is not addressed by the parties, the court nonetheless considers the arguments made therein.

and was [allegedly] traumatized by all of these events." <u>Id.</u> ¶ 18.

While handcuffed in the back seat of the patrol car, Ms. Lizotte was allegedly "assaulted by Deputy Steve Neal who sprayed 'OC' spray into her face[,]" <u>id.</u> ¶ 19, including her "eyes, nose, and mouth[.]" <u>Id.</u> ¶ 38. Officer Young then drove the patrol car to the Southern Regional Jail, allegedly at "excessively high rates of speed . . . thus endangering the life and health of Ms. Lizotte." <u>Id.</u> ¶ 20. Ms. Lizotte was "delivered into the custody of Defendant West Virginia Department of Corrections and Rehabilitation's Southern Regional Jail and Correctional Facility where she was [allegedly] illegally held, without any legitimate charges against her for several days." <u>Id.</u> ¶ 22. While in jail, she allegedly "suffered maltreatment at the hands of unknown employees[ ]and or agents of the defendant West Virginia Department of Corrections and Rehabilitation's Southern Regional Jail and Correctional Facility in that she was forced to sleep upon a bare concrete floor, and was assaulted by said unknown employees and or agents of said defendant with resulting dental injury." <u>Id.</u> ¶ 23.

Ms. Lizotte was charged with "obstructing justice, assault on a police officer and disorderly conduct[,]" id. ¶ 27, each of which, according to the complaint, "were without merit and were dismissed." Id. ¶ 29. The arrest was allegedly "without reasonable grounds for the Defendants to believe that Plaintiff had committed the offenses charged." Id. ¶ 30. The defendants allegedly knew that they lacked probable cause to arrest Ms. Lizotte "as they were the ones who [allegedly] committed assault against [Ms. Lizotte.]" Id. Ms. Lizotte claims that the "Fayette County Sherriff (sic) and Fayette County Sheriff's Department failed to train and supervise his/its Defendant employees adequately to prevent such blatant miscarriages of justice[,]" id. ¶ 31, and further alleges that the defendants' actions in arresting her were "concerted and malicious[.]" Id. ¶ 34. She additionally alleges that "Defendants Young, Neal, and the Fayette County Sheriff's Department had knowledge of, or (had they diligently exercised their duties to instruct, supervise, and control their own actions and actions of their agents) should [have] had knowledge that the wrongs conspired to be done were about to be committed[,]" and that each defendant "had the power to prevent or aid in preventing the commission of said wrongs and could have done so by reasonable diligence[,]" yet "intentionally,

knowingly, recklessly, or negligently, failed to do so." Id. ¶ 51.

As a result of these events, Ms. Lizotte claims to have suffered "severe physical injury in the form of eye pain from the OC spray, dental injury, and severe mental anguish[.]" Additionally, the complaint alleges that "the Plaintiff's child Walter Lizotte suffered extreme distress from being forced to observe and endure his mother's maltreatment at the hands of uniformed and armed police officers." Id. ¶ 81.

Ms. Lizotte brings eleven causes of action arising from these events, each claim asserted against all defendants. She asserts six violations of 42 U.S.C. § 1983: false arrest (Count I); excessive force (Count II); detention and confinement (Count III); conspiracy (Count IV); refusing or neglecting to prevent (Count V); and malicious prosecution and abuse of process (Count VI). She additionally asserts five state law claims: false arrest and imprisonment (Count VII); assault and battery (Count VIII); malicious prosecution and malicious abuse of process (Count IX); intentional and negligent infliction of emotional distress (Count X); and negligence (Count XI). For each of the asserted claims, Ms. Lizotte seeks $2,000,000 in compensatory damages and $5,000,000 in punitive damages. Id., WHEREFORE clauses throughout.

Ms. Lizotte filed her original complaint on October 27, 2018, and an amended complaint on December 12, 2018. Deputy Joseph A. Young, Deputy Stephen K. Neal, and the current Fayette County Sheriff, Michael Fridley[3], each filed motions to dismiss. The nonmoving defendants, Steve Kessler, Michael Francis, and the Southern Regional Jail and Correctional Facility[4], have not been served by the plaintiff nor otherwise made an appearance in this case.

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d

---

[3] Michael Fridley assumed the position of Sheriff after being elected thereto in November 2016.

[4] It is unclear whether the Southern Regional Jail is intended to be a defendant or is simply listed as a descriptor of defendant Michael Francis.

380, 386 (4th Cir. 2009) (quoting <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008)).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

A district court's evaluation of a motion to dismiss is underlain by two principles.  First, the court "must accept as true all of the factual allegations contained in the [pleading]." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citing <u>Twombly</u>, 550 U.S. at 555-56).  Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true.  <u>Iqbal</u>, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

### III. Discussion

As an initial matter, each of the moving defendants argue in their respective motions that the case should be dismissed because service was not timely executed. Specifically, the original complaint in this case was filed on October 27, 2018, and each of the moving defendants contend that

7

they were not served until January 30, 2019, five days after the ninety-day period for service required under Fed. R. Civ. P. 4(m) had expired.

The plaintiff does not dispute the timing set forth by the defendants, but rather asks the court to exercise its discretion by denying the defendants' motion and granting her motion, filed contemporaneously with her response to the motion to dismiss, to extend the time for service of process through January 30, 2019. In support, she contends that: the defendants would not suffer any prejudice from the extension; the statute of limitations would bar the refiling of her claims; and the delay was due to excusable neglect, in that her counsel was injured in a motor vehicle accident and was the only attorney working on the case. In response, the defendants argue that the plaintiff has not shown good cause because service of process need not be performed by an attorney. Finding good cause, the court grants the plaintiff's motion to extend the time of service and the defendants' first argument is rejected.

Next, each of the moving defendants argue that the statute of limitations has expired for the state law claims of false arrest, assault and battery, and malicious prosecution and abuse of process. Inasmuch as the plaintiff concedes that the claims for false arrest and for malicious prosecution and abuse

of process are governed by a one-year statute of limitations and does not dispute that the claims accrued well over one year prior to the filing of her complaint, those claims are dismissed.

As for assault and battery, however, the plaintiff contends that the claim is governed by a two-year statute of limitations, a contention to which the defendants do not reply. Indeed, W. Va. Code § 55-2-12 states that "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" <u>See</u> <u>also</u> <u>Courtney v. Courtney</u>, 190 W. Va. 126, 129 (1993) ("it is clear that damages for personal injuries arising out of an assault and battery are controlled by the two-year statute of limitations contained in W. Va. Code, 55-2-12(b)."). The court thus agrees with the plaintiff that her claim for assault and battery is governed by a two-year statute of limitations. Inasmuch as the alleged assault and battery occurred on October 28, 2016, and the complaint was filed October 27, 2018, the court finds that the claim was brought within the statute of limitations and cannot be dismissed on that ground.

At this stage, the court has dismissed Count VII --
state law false arrest and imprisonment -- and Count IX -- state
law malicious prosecution and abuse of process -- as to all
defendants.  Next, the court addresses the arguments of the
moving defendants that they are each immune from certain of
plaintiff's claims.

Deputies Neal and Young contend that they are
statutorily immune from plaintiff's state law claims for the
negligent infliction of emotional distress portion of Count X
and negligence (Count XI).  Under the West Virginia Tort Claims
and Insurance Reform Act, employees of political subdivisions
are immune from suit except in certain situations:

> (b) An employee of a political subdivision is immune
> from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly
> outside the scope of employment or official
> responsibilities;
>
> (2) His or her acts or omissions were with malicious
> purpose, in bad faith, or in a wanton or reckless
> manner; or
>
> (3) Liability is expressly imposed upon the employee
> by a provision of this code.

W. Va. Code § 29-12A-5.  This is distinguished from § 29-12A-
4(c)(2), which establishes liability of political subdivisions
for the actions of their employees.  See e.g., Kelley v. City of
Williamson, W. Virginia, 221 W. Va. 506, 513 (2007) ("Before any

final resolution can be reached in this case, a jury must determine whether Officer Barnes acted in a negligent manner, thus subjecting the City to liability for his actions under West Virginia Code § 29-12A-4(c)(2), or if his acts were in bad faith, malicious, or wanton and reckless, thus subjecting Officer Barnes to liability under West Virginia Code § 29-12A-5(b)."). Relevant here is subsection (2), inasmuch as the plaintiff does not allege facts to support (1), and (3) is inapplicable. Because political subdivision employees are only liable if their acts were malicious, in bad faith, wanton or reckless, they are immune from actions based on mere negligence.

Plaintiff does indeed allege, however, that "Defendants Young, Neal, negligently and <u>recklessly</u> acted with cavalier disregard for the injuries and serious medical consequences which could result from their violent behavior." Compl. ¶ 92 (emphasis added). She additionally alleges in other counts of the complaint that the defendants acted maliciously. See <u>id.</u>, ¶¶ 24, 43, 50, 76. She thus contends that she has alleged sufficient facts to show that the defendants acted maliciously, in bad faith, wantonly, or recklessly, and thus should not be immune.

However, the allegations of intentional conduct the
plaintiff alleges run paradoxically to her claim of negligence.
This court has previously stated: "'a mere allegation of
negligence does not turn an intentional tort into negligent
conduct.'" Weigle v. Pifer, 139 F. Supp. 3d 760, 780 (S.D.W.
Va. 2015) (quoting Benavidez v. United States, 177 F.3d 927, 931
(10th Cir.1999)). "Conduct that supports a negligence claim can
be distinguished from conduct that supports an intentional tort
claim by examining the subjective intent of the alleged
tortfeasor. 'Intentional torts, as distinguished from negligent
or reckless torts . . . generally require that the actor intend
'the consequences of an act,' not simply 'the act itself.''"
Id., (quoting Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998))
(emphasis in original). Inasmuch as the deputies' "violent
behavior" serves as the basis for the plaintiff's negligence
claim, it is apparent that the officers are alleged to have
intended the consequences of their actions during Ms. Lizotte's
arrest. That is, the complained-of use of force which caused
the alleged injuries was undertaken for the purpose of
completing Ms. Lizotte's arrest, gaining entry into her home,
and otherwise inflicting violence upon her, as alleged. Thus,
while the deputies' alleged actions, as pled, may give rise to
an intentional tort, they fail to state a claim predicated on
negligence. Moreover, were the plaintiff to plead pure

negligence, the defendants would be immune thereto. <u>See</u>, <u>e.g.</u>,
<u>Honaker v. Town of Sophia</u>, 184 F. Supp. 3d 319, 325 (S.D.W. Va.
2016) ("the Plaintiff's efforts to argue on the one hand that
[Officer] Issa's actions were negligent rather than intentional,
and on the other that West Virginia immunity does not apply
because he acted with malicious purpose, are unavailing.").

        As for the claim of negligent infliction of emotional
distress in Count X, the plaintiff alleges:

> Defendants intentionally and deliberately, recklessly,
> or negligently, inflicted severe emotional distress on
> Plaintiff along with the accompanying severe physical
> harm she suffered, by forcing her to the floor of her
> own house, hand cuffing her, spraying her eyes, and
> causing her to be illegally incarcerated for several
> days. Finally, Plaintiff was forced to endure a
> criminal proceeding which ultimately ended with a
> dismissal of all charges. Defendants Young and Neal
> conspired against her by attempting to cover up their
> illegal actions by bringing illegitimate criminal
> charges. In doing so, they violated her civil rights
> under the Fourth, Fifth, Sixth, Eight[h], and
> Fourteenth Amendments to the US Constitution.

Compl. ¶ 79. Again, each of the deputies' alleged actions were
intended to cause the alleged result, and thus cannot give rise
to a claim for negligence. The plaintiff has therefore failed
to state a claim for negligent infliction of emotional distress,
although she may still prevail on a claim for intentional

infliction of emotional stress.[5]  The same is true for the
negligent infliction of emotional distress claim made on behalf
of Walter Lizotte, Ms. Lizotte's son, because the alleged
conduct is the same.  See id. at ¶ 81 ("As a result of this
protracted process, which was extreme and outrageous, and during
which Plaintiff was completely at the mercy of the
authorities[,] the Plaintiff's child Walter Lizotte suffered
extreme distress from being forced to observe and endure his
mother's maltreatment at the hands of uniformed and armed police
officers.").

        Accordingly, the plaintiff's claim for negligence
(Count XI) is dismissed as to the deputies, as are the
plaintiff's claims for negligent infliction of emotional
distress (Count X).  Each of these counts remain partially
intact, inasmuch as Count XI contains a negligence claim against

---

[5] The court notes additionally that there are two instances
delineated by the West Virginia Supreme Court of Appeals in
which a plaintiff may recover for negligent infliction of
emotional distress: "The first deals with a plaintiff who
witnesses a serious injury or death of a closely related
individual due to the negligence of a third party[,]" Polk v.
Town of Sophia, No. 5:13-CV-14224, 2013 WL 6195727, at *7
(S.D.W. Va. Nov. 27, 2013) citing Heldreth v. Marrs, 188 W. Va.
481 (1992); and the second deals with a plaintiff "suffering
severe emotional distress because of exposure to a known
dangerous disease[,]" id., at *8, citing Marlin v. Bill Rich
Construction, Inc., 198 W. Va. 635 (1996).  Neither are alleged
as the basis of Ms. Lizotte's claim.

the Fayette County Sheriff and Count X contains a claim for
intentional infliction of emotional distress.

The other moving defendant, Fayette County Sheriff
Michael Fridley, asserts that he is statutorily immune from each
of the plaintiff's state law intentional tort claims, the
remaining of which are assault and battery (Count VIII), and
intentional infliction of emotional distress (Count X).

The court notes, first, that Sheriff Fridley was not
yet the Fayette County Sheriff at the time of the alleged events
and the complaint does not otherwise allege any misdoing by
Sheriff Fridley individually.  To the extent the plaintiff seeks
any relief from Sheriff Fridley in his personal capacity,
therefore, such fails and Sheriff Fridley is dismissed as a
defendant in his personal capacity.  The plaintiff's claims may
proceed, however, against Michael Fridley in his official
capacity as the Fayette County Sheriff.

Official-capacity suits "generally represent only
another way of pleading an action against an entity of which an
officer is an agent."  Hafer v. Melo, 502 U.S. 21, 112 S.Ct.
358, 116 L.Ed.2d 301 (1991).  Thus, the court construes the
claims against Sheriff Fridley in his official capacity as being
claims against Fayette County, a political subdivision.

Under W. Va. Code Ann. § 29-12A-4(c), political subdivisions are liable for the acts of their employees only when the claims against them sound in negligence: "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." See also e.g., Tofi v. Napier, No. 2:10-CV-01121, 2011 WL 3862118, at *3 (S.D.W. Va. Aug. 31, 2011) ("This subsection makes political subdivisions liable for negligent acts, not intentional ones."). The intentional tort claims asserted against Sheriff Fridley in his official capacity must therefore be dismissed. See e.g., id., at *3 ("Because the City of Charleston and the officers in their official capacities are immune from intentional torts, Plaintiff has failed to state a claim against them on these counts."). Accordingly, Count VIII is dismissed against the Sheriff, as is the intentional infliction of emotional distress portion of the claim of Count X.

The defendants do not make any other arguments regarding immunity from suit.

Remaining in the motions to dismiss are two arguments made by the Sheriff. First, he contends that the plaintiff's § 1983 claims against him must be dismissed because the plaintiff

has not alleged the existence of a municipal policy.  Again, the

allegations against the Sheriff in his official capacity are

considered allegations against the municipality of Fayette

County.

Section 1983 provides the following, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C.S. § 1983.  Local government units are "persons" under

§ 1983 and are subject to suit.  <u>Monell v. Dep't of Soc. Servs.,</u>

436 U.S. 658, 690 (1978).  Liability of a local government must

be direct; a respondeat superior theory of liability does not

suffice.  <u>See</u> <u>id.</u> at 691.

A local government is liable under § 1983 only when

"through its deliberate conduct, the [local government] was the

'moving force' behind the injury alleged."  <u>Bd. of the. Comm'rs</u>

<u>of Bryan Cty. v. Brown</u>, 520 U.S. 397, 404 (1997) (emphasis

omitted).  Such occurs "when execution of [the] government's

policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official

policy, inflicts the injury." Id. at 694; see also Semple v.
City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999)
("[P]laintiffs seeking to impose liability on a municipality
must, therefore, adequately plead and prove the existence of an
official policy or custom that is fairly attributable to the
municipality and that proximately caused the deprivation of
their rights.").

A local government manifests a "policy or custom" in
four ways:

> (1) through an express policy, such as a written
> ordinance or regulation; (2) through the decisions of
> a person with final policymaking authority; (3)
> through an omission, such as a failure to properly
> train officers, that "manifest[s] deliberate
> indifference to the rights of citizens"; or (4)
> through a practice that is so "persistent and
> widespread" as to constitute a "custom or usage with
> the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting
Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)); see also
Connick v. Thompson, 563 U.S. 51, 61 (2011).  In the complaint,
the plaintiff apparently contends either that Fayette County had
an express policy allowing the constitutional violations to
occur or otherwise failed to adequately train the deputies.  She
does not allege that the deputies have final policymaking

authority, nor that the subject events were part of a widespread and persistent practice.[6]

As for the plaintiff's contention that the defendants were acting pursuant to an express policy, such is insufficiently pled.  Only once in her ninety-three-paragraph complaint does the plaintiff mention a potential express policy. At paragraph 8, under the section entitled "parties," the complaint states: "At all times material to this Complaint, Defendants Neal and Young, the Fayette County Sheriff and the Fayette County Sheriff's Department acted toward the Plaintiffs under color of statutes, ordinances, customs, and usage of the State of West Virginia, Fayette County, West Virginia, and the Fayette County Sheriff's Office."  Compl. ¶ 8.  Without any factual allegations as to the nature of these alleged statutes or ordinances or how they caused the plaintiff's injuries, the plaintiff has failed to plead "the existence of an official policy or custom that is fairly attributable to [Fayette County] and that proximately caused the deprivation of [her] rights."

_____

[6] That is, Ms. Lizotte has not alleged that the events giving rise to her claim occurred in any other instance, and "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes.  Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice."  Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (internal citations omitted).

<u>Semple</u>, 195 F.3d at 712.  Rather, the paragraph is merely a
broad allegation that the officers were acting under some
unidentified official policy when they allegedly deprived Ms.
Lizotte of her constitutional rights.  Such is insufficient.

The plaintiff also maintains that Fayette County is
liable under a failure-to-train theory.  Throughout the
complaint, the plaintiff asserts that "Defendant Fayette County
Sheriff and Defendant Fayette County Sheriff's Department[7] is
vicariously liable for the unlawful acts of their agents, and in
that he/they did not supervise or train them properly."  Compl.
¶ 57, see also ¶¶ 31, 62, 63, 68, 77, and 90.

For § 1983 claims against municipalities, "a failure
to train can only form a basis for liability if 'it can be shown
that policymakers were aware of, and acquiesced in, a pattern of

---

[7] The Fayette County Sheriff's Department is not listed as a
separate defendant and is not a party in this case.  Indeed, the
Fayette County Sheriff's department is not a separate legal
entity capable of being sued.  <u>See</u> <u>e.g.</u>, <u>Webb v. Raleigh Cty.</u>
<u>Sheriff's Dep't</u>, No. 5:09-CV-01253, 2010 WL 3702648, at *7
(S.D.W. Va. Sept. 16, 2010) ("the Raleigh County Sheriff's
Department is not an entity capable of being sued.  While West
Virginia law provides for the election of sheriffs and the
appointment of sheriff's deputies, there is no organic authority
in state law that creates a sheriff's department or sheriff's
office."), and <u>Rankin v. Berkeley Cty. Sheriff's Dep't</u>, 222 F.
Supp. 2d 802, 807 (N.D.W. Va. 2002) ("[t]he separate claim
against the 'Office of Sheriff' was rightly dismissed on the
basis that this 'office' is not a cognizable legal entity
separate from the Sheriff in his official capacity and the
county government of which this 'office' is simply an agency.").

constitutional violations.'" Lytle, 326 F.3d at 474 (quoting

City of Canton, Ohio v. Harris, 489 U.S. 378, 397 (1989)).

Absent the existence of a pattern, a single incident may suffice

only "in a narrow range of circumstances[.]" Connick, 563 U.S.

at 63 (quoting Bryan Cty., 520 U.S. at 409). Specifically, a

municipality may be liable for a single, isolated incident where

the need for training with respect to an officer's conduct was

"patently obvious[.]" Id. Ultimately, municipal "liability may

attach if officers are not adequately trained 'in relation to

the tasks the particular officers must perform,' and this

deficiency is 'closely related to the ultimate injury.'" Lytle,

326 F.3d at 473 (citing Harris, 489 U.S. at 390–91).

        The complaint plainly does not allege "a pattern of

violations from which a kind of 'tacit authorization' by city

policymakers can be inferred." Harris, 489 U.S. at 397

(O'Connor, J., concurring) (citations omitted). The plaintiff

does not allege the existence of any constitutional violations

by the defendants beyond those which allegedly occurred during

her arrest and brief detainment. There are further no facts

alleged from which one could reasonably infer that the need for

further training was "patently obvious," as to establish a

single-incident theory of liability, nor that the deputies'

supervisors otherwise had reason to believe that the deputies

were likely to commit constitutional violations.  Moreover, the plaintiff fails to allege any specific deficiencies that are closely related to her injury.  See Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987) (citing Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir. 1985)) ("In common parlance, the specific deficiency or deficiencies must be such as to make the specific violation 'almost bound to happen, sooner or later,' rather than merely 'likely to happen in the long run.'").  The mere allegations that Deputies Neal and Young violated the plaintiff's constitutional rights because the Fayette County Sheriff "did not supervise or train them properly" is woefully inadequate to establish that the Fayette County Sheriff was aware of, acquiesced in, and/or acted with deliberate indifference towards, unconstitutional conduct of its deputies, and that any deficient training caused the alleged violations.

Accordingly, the plaintiff has failed to state a claim of direct liability by the Fayette County Sheriff under § 1983 inasmuch as she has not adequately pled the existence of a municipal custom or policy.  Each of the § 1983 claims (Counts I – VI) are therefore dismissed as to the Fayette County Sheriff.

Lastly, the Fayette County Sheriff seeks to dismiss the Count XI state law negligence claim against it for negligent failure to train, instruct, and supervise the deputies,

asserting that the claim is inadequately pled.  This claim for
negligent training is governed by a standard different than that
discussed above to establish the municipality liability in a §
1983 action.  See e.g., Gilco v. Logan Cty. Comm'n, 2:11-cv-
0032, 2012 WL 3580056, at *8 (S.D.W. Va. Aug. 17, 2012) ("Unlike
her federal claim under section 1983, Gilco's claim under the
Governmental Tort Claims Act for negligent hiring, training, and
supervision does not require a showing of 'deliberate
indifference,' nor does it require that she establish a
widespread 'custom or policy.'").  Instead, a claim for
negligent training or supervision is governed by general
negligence principles.  See Taylor v. Cabell Huntington Hosp.,
Inc., 208 W.Va. 128, 134 (2000).

        "Under West Virginia law, to state a claim for
negligent supervision or training, a Plaintiff must show that
'[a municipal defendant] failed to properly supervise [an
employee officer] and, as a result, [the employee officer]
proximately caused injury to the [plaintiff].'"  Honaker, 184 F.
Supp. 3d at 326 (alterations in original) (quoting Woods, 712
F.Supp.2d at 515.  To survive at this stage, the plaintiff must
simply allege facts which state a claim of negligent training
and supervision that is plausible on its face, a small burden
which the plaintiff has met.

The complaint alleges that the Fayette County Sheriff failed to adequately train and supervise its employees, and that such failure resulted in the events which caused the plaintiff's injuries. <u>See</u> Compl. ¶ 90 ("The Fayette County Sheriff and Fayette County Sheriff's Department negligently failed to train, instruct and supervise his/their agents and employees so as to prevent the events which occurred in this matter, to wit, the violent apprehension, arrest, detention, and filing of charges without probable cause."). While the plaintiff will certainly need to prove additional facts to prevail, the court cannot say that it is implausible that the Fayette County Sheriff inadequately trained/supervised the deputies, and that such failure caused the deputies to commit the acts of which they are accused. Accordingly, construed in the plaintiff's favor, the court finds that the complaint adequately pleads a negligent failure to train, instruct, or supervise claim against the Fayette County Sheriff. The claim survives.

IV.  Conclusion

In sum, generally speaking, remaining in this case are Counts I, II, III, IV, V, VI, and VIII against each defendant except Sheriff Fridley, the intentional infliction of emotional distress claim of Count X against each defendant except Sheriff

Fridley, and the negligence claim of Count XI against each party except the deputies.

More particularly, based on the foregoing discussion, it is ORDERED that:

1. The motions of defendants Sheriff Fridley, Deputy Neal and Deputy Young be, and they hereby are, granted in part and denied in part, as set forth herein;

2. The motion of plaintiff Liza Lizotte to extend the time for service of process be, and it hereby is, granted as set forth herein;

3. Michael Fridley be, and he hereby is, dismissed in his personal capacity;

4. Michael Fridley, in his official capacity as the Fayette County Sheriff, be, and he hereby is, dismissed except as to Count XI;

5. Counts I, II, III, IV, V, and VI be, and they hereby are, dismissed only as to the Sheriff;

6. Count VII (false arrest/imprisonment) be, and hereby is, dismissed in its entirety;

7. Count VIII be, and hereby is, dismissed only as to the sheriff;

8. Count IX (malicious prosecution and abuse of process) be, and hereby is, dismissed in its entirety;

9. The negligent infliction of emotional distress portion of the claim of Count X be, and hereby is, dismissed;

10. The intentional infliction of emotional distress portion of the claim of Count X be, and hereby is, dismissed only as to the Sheriff; and

11. The claim in Count XI asserted against the deputies be, and hereby is, dismissed.

Additionally, inasmuch as the plaintiff has not served the nonmoving defendants or otherwise taken any steps to pursue her causes of action against them, the plaintiff is afforded until July 23, 2019 to effectuate service of process on those defendants.  If such is not done, the court will dismiss those defendants without prejudice.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: July 2, 2019

John T. Copenhaver, Jr.
Senior United States District Judge